T.C. Memo. 2015-33

UNITED STATES TAX COURT

LEONARDO VILLEGAS, Petitioner v. COMMISSIONER OF
INTERNAL REVENUE, Respondent

GRACE VILLEGAS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 10600-12, 25070-13.      Filed February 26, 2015.

Leonardo Villegas and Grace Villegas, pro sese.

Carolyn A. Schenck and Katherine Holmes Ankeny, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, Judge:  By separate notices, respondent determined deficiencies in

petitioners' individual 2007 income tax and additions to tax as follows:[1]

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year at issue.  All Rule references are to the Tax

(continued...)

| [*2] | | Additions to tax | | |
|---|---|---|---|---|
| | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
| Leonardo Villegas[1] (Mr. Villegas) | $132,912 | $29,905 | $33,228 | $6,049 |
| Grace Villegas (Mrs. Villegas) | 134,008 | 30,152 | 33,502 | 6,099 |

[1]Respondent originally determined a deficiency in Mr. Villegas' income tax of $187,146 and additions to tax totaling $91,797 for 2007. Respondent's subsequently revised position, shown above, reflects Mr. Villegas' 50% community property share in certain income items. Respondent prepared a second substitute for return (SFR) to account for these changes.

After concessions, the issues for decision are: (1) whether petitioners are entitled to exclude from gross income a portion of the gain realized from the sale of their group home property in 2007; (2) whether petitioners are entitled to add the cost of capital improvements to their basis in the group home property; (3) whether petitioners are entitled to deduct expenses reported on Schedule C, Profit or Loss from Business, of their 2007 tax returns for their group home business; and (4) whether petitioners are liable for additions to tax for the 2007 tax year.[2]

---

[1](...continued)
Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2]Petitioners' self-employment tax is also at issue. Self-employment income is subject to self-employment tax. Sec. 1401(a). A taxpayer's self-employment

(continued...)

[*3]                         FINDINGS OF FACT

Some of the facts have been deemed stipulated pursuant to Rule 91(f) by reason of petitioners' failure to respond to an order to show cause.[3] The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioners were married and resided in California, a community property State, when their petitions were filed. Petitioners were both cash method taxpayers for the year at issue. Their cases were consolidated for trial, briefing, and decision.

In 1994 petitioners purchased a four-bedroom house in Diamond Bar, California (Diamond Bar), for $200,000. The house included a kitchen, two bathrooms, a living room, a family room, a garage, and an outdoor area with a patio and a pool. That same year they decided to develop the Diamond Bar house as a group home for the developmentally disabled and started doing business as the L. Marillac Group Home (Marillac). Petitioners used the Diamond Bar house

---

[2](...continued)
income generally is equal to the gross income derived from business less any business expenses which the taxpayer substantiates. Sec. 1402(a) and (b); sec. 1.1402(a)-1(a)(1), Income Tax Regs. Respondent's determinations with respect to petitioners' self-employment tax and deductions are computational adjustments that will be resolved by our decisions on the primary issues.

[3]Proposed stipulations of fact were deemed established by the Court's April 28, 2014, order.

[*4] to accommodate and care for Marillac's six clients. The clients used three bedrooms, with two clients per bedroom. Petitioners used the fourth bedroom as their office.

Marillac cared for its clients by attending to their personal hygiene, providing meals, and organizing activities for them throughout the day. Marillac was reimbursed for these services by the California Department of Health Care Services (DHCS). In 2007 DHCS paid Marillac a total of $341,916 for its services. That same year DHCS issued a Form 1099-MISC, Miscellaneous Income, to Marillac to report its payments to petitioners in conjunction with these services. Petitioners, as sole proprietors of Marillac, received this income.

On late-submitted returns for the 2007 tax year, petitioners reported total expenses of $239,258 for Marillac on their respective Schedules C. This total included, among other items, wage expenses of $89,621, repair and maintenance expenses of $6,604, tax and license expenses of $12,010, home office expenses of $25,708, and "other expenses" of $84,095. These "other expenses" included $2,548 in "Bank Service Charges" and the same $6,604 for "Facility Maintenance" that petitioners reported under repair and maintenance expenses. Petitioners also deducted $2,083 for depreciation. To substantiate these expenses, petitioners produced to respondent 636 pages of records including invoices, bank

[*5] records, a payroll register, and receipts.  The records contained information pertaining to total taxable wages paid by Marillac to its employees, license fees incurred by Marillac, and evidence that Marillac's business bank accounts were used at times for petitioners' personal foreign travel.  The records also contained a summary spreadsheet of operating expenses by category for January through November 2007.  These categories, however, did not correspond to the categories of expenses listed on petitioners' 2007 tax returns, and petitioners did not explain how this spreadsheet correlated with the expenses reported on their returns.  The other records produced to respondent did not contain useful information for determining the amounts of petitioners' remaining reported expenses.

In order to deduct home office expenses, petitioners claimed the Diamond Bar house was their personal residence.  Mrs. Villegas' slept at the Diamond Bar house from time to time, but petitioners did not live at the Diamond Bar house and in fact lived at a house on Mulvane Street in La Puente, California (Mulvane), with their three children, one nephew, and Mr. Villegas' parents.  Petitioners' checks, bank records, payroll records, tax preparation documents, and children's school records indicated that they used the Mulvane address.  Marillac's former bookkeeper also traveled to Mulvane to work on Marillac's cost reports for DHCS

[*6] with Mrs. Villegas. Another former employee went to Mulvane for social gatherings with petitioners.

After receiving petitioners' documentation, respondent reviewed this integrated data retrieval system (IDRS) and compared it with the payroll register and bank statements petitioners produced to reconcile the expenses they reported on their tax returns. Through this analysis respondent determined that petitioners could deduct only $57,392 in wage expenses and $5,605 in tax and license expenses.

Petitioners claim they made numerous home improvements during the more-than-10-year period they owned the Diamond Bar house to operate Marillac's group home. However, the only record of costs of improvements they submitted was a two-page handwritten table listing various examples of improvements. On the table, petitioners wrote amounts for costs next to improvements they thought pertained to the Diamond Bar house with the respective years they incurred these costs. No other evidence was provided to substantiate the amounts listed on this document.

In 2007 petitioners sold the Diamond Bar house for $600,000, and they received a Form 1099-S, Proceeds From Real Estate Transactions, from Coast City Escrow reporting the sale. In order to exclude from gross income a portion of the

**[*7]** gain from the sale under section 121, petitioners claimed the house was their principal residence. Petitioners each excluded more than $250,000 of gain from the sale on their separate returns for 2007.

In August of 2007 petitioners sold the Marillac group home business to their former bookkeeper for $180,000. In 2008 petitioners received a Form 1099-MISC, from the buyer reporting the sale of Marillac from the prior year.

Petitioners did not timely file returns for 2006 and 2007. The IRS prepared substitutes for returns (SFRs) for 2007 based on information returns that it received. In its calculations the IRS allowed a standard deduction for a single filer and one exemption for each of petitioners' returns. The IRS used the SFRs to prepare petitioners' notices of deficiency. After respondent mailed the notices of deficiency, petitioners submitted returns for 2006 and 2007 and timely sought redetermination in this Court.

OPINION

I.     Petitioners' Tax Liabilities

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115

[*8] (1933).  Petitioners do not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

### A.    Petitioners' Principal Residence

Section 121 excludes from gross income gain from the sale of a principal residence.  Generally, the property being sold must be a principal residence for an aggregate of at least two years during the five-year period preceding the date of the sale.  A principal residence is "the primary dwelling or house that a taxpayer occupied as his principal residence."  Gates v. Commissioner, 135 T.C. 1, 10 (2010).  If taxpayers own two residences, they can satisfy the section 121 requirements with regard to only one.  See sec. 1.121-1(b)(2), Income Tax Regs.  Petitioners did not live or reside at the Diamond Bar house at any time while operating the Marillac group home at this site.  First, none of Marillac's employees saw petitioners live at this address, and two former employees testified at trial that petitioners lived on Mulvane.  Second, none of the school records for petitioners' children indicate that petitioners lived at the Diamond Bar address but instead show that petitioners lived at Mulvane.  Third, Mrs. Villegas' sister told an IRS agent that petitioners lived at Mulvane.  Finally, we are not persuaded by Mrs. Villegas' claim that she stayed overnight at the Diamond Bar house because the

**[\*9]** room that Mrs. Villegas claimed to use as her bedroom was known to Marillac employees as an office. Moreover, Mrs. Villegas' credibility is diminished by her testimony at trial and her conduct during a hearing with the Court.

We conclude that under section 121 petitioners' Diamond Bar house was not petitioners' principal residence for two of the five years preceding its sale. We accordingly sustain respondent's determination that the section 121 exclusion does not apply.

B.     Adjusted Basis in the Diamond Bar property

Generally, a taxpayer must recognize gain from the sale or exchange of property. Sec. 1001(c); see also sec. 1.61-6(a), Income Tax Regs. (providing, generally, that gain realized on the sale of property is included in gross income). Section 1001(a) defines gain from the sale of property as the excess of the amount realized on the sale of property over the adjusted basis of the property sold or exchanged. Section 1011(a) provides that a taxpayer's adjusted basis for determining the gain from the sale or other disposition of property shall be its cost, adjusted to the extent permitted by section 1016. See sec. 1016(a)(1); sec. 1.1016-2(a), Income Tax Regs. (providing that the cost basis is increased by additional

[*10] costs properly chargeable to capital account, including the cost of improvements and betterments made to the property).

Petitioners purchased the Diamond Bar house in 1994 for $200,000, and this is their cost basis in the property. Petitioners argue that they are entitled to an increased basis in the property because of costs incurred for various improvements. The only evidence petitioners offer to substantiate their costs for improvements is their two-page table that generally lists various home improvements. The table contains handwritten amounts next to those improvements pertaining to the Diamond Bar property with the year each improvement was made. No other documentation was submitted to substantiate costs of petitioners' improvements or to verify the amounts listed on the handwritten table. We hold that petitioners have failed to establish that any of the handwritten amounts on their table were in fact paid in connection with the Diamond Bar property. We accordingly find that petitioners' basis in the Diamond Bar property is their cost basis of $200,000.

C.    Schedule C Expenses

Section 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." A necessary expense is one that is "appropriate and helpful" to the taxpayer's business; ordinary expenses are those that are common or frequent in

[*11] the type of business in which the taxpayer is engaged. Deputy v. du Pont, 308 U.S. 488, 495 (1940); Welch v. Helvering, 290 U.S. at 113. Personal, living, and family expenses are generally not deductible. Sec. 262.

Petitioners provided no credible evidence of any business expenses paid or incurred during 2007 in excess of the amounts respondent conceded and allowed. In an attempt to substantiate their expenses, petitioners submitted a disorganized assortment of invoices, receipts, and bank records to respondent. Some of these documents relate to personal expenses, such as foreign travel, instead of business expenses, and many of the documents do not appear to correspond to the categories of expenses listed on the table petitioners submitted as a summary of their expenses. Petitioners admit that one category of expenses, "Repairs and Maintenance", was counted twice on their return. At trial petitioners failed to clarify how the documents they produced related to their reported expenses or establish that these expenses were in fact incurred. Petitioners ignored our specific instructions to link their evidence to respondent's adjustments. We need not (and will not) undertake the task of sorting through the voluminous evidence petitioners have provided in an attempt to see what is, and what is not, adequate substantiation of the items on their returns. See Hale v. Commissioner, T.C. Memo. 2010-229; Patterson v. Commissioner, T.C. Memo. 1979-362. Because

**[\*12]** petitioners failed to link the invoices, receipts, and bank records that they produced with the amounts of expenses they reported, we hold that petitioners are not entitled to any deduction for business expenses for the 2007 tax year beyond the amounts respondent conceded and allowed.[4]

## II.    Additions to Tax

Respondent bears the burden of production for the additions to tax. See sec. 7491(c).  Once respondent meets the burden of production, petitioners bear the burden of proof, including the burden of proving reasonable cause for their late payment or late filing.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

### A.    Failure To Timely File a Tax Return

Section 6651(a)(1) provides for an addition to tax when a taxpayer fails to file a return timely, unless the taxpayer proves that the failure was due to reasonable cause and not due to willful neglect.  Late filing of a return is due to reasonable cause "[i]f the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time."  Sec.

---

[4]Petitioners also claimed $25,709 in home office expense deductions.  As we stated earlier, petitioners did not use the Diamond Bar property as their principal residence.  See sec. 280A.  Therefore, we conclude that no home office deduction is allowable.

**[\*13]** 301.6651-1(c)(1), Proced. & Admin. Regs. For each month or fraction thereof for which such failure continues, section 6651(a)(1) adds 5% of the tax required to be shown on such return, up to a maximum addition of 25%.

It was deemed stipulated that petitioners did not file timely returns for 2007, but petitioners advance two explanations for their failure to file timely: (1) they thought they owed no tax at the time and (2) they were confused as to when to report income from the sale of Marillac because the buyer did not issue them a Form 1099-MISC for the sale of the business until after the time to file had passed. Further, Mr. Brown, petitioners' accountant, whom they relied on in 2012 to prepare and file their 2007 returns, claimed he needed additional time to gather information about the cost basis of petitioners' Diamond Bar property and the expenses related to Marillac.

First, petitioners' belief that returns for 2007, if prepared, would show no payments due provides no justification for neglecting to prepare and file those returns because petitioners' gross income for 2007 far exceeded the threshold for nonfilers. A taxpayer's mistaken belief that he or she need not file a return is not reasonable cause. See Henningsen v. Commissioner, 26 T.C. 528, 536 (1956), aff'd, 243 F.2d 954 (4th Cir. 1957); Ruggeri v. Commissioner, T.C. Memo. 2008-300.

**[*14]** Second, petitioners' assertion that the buyer's late issuance of a Form 1099-MISC pertaining to the sale of Marillac was somehow responsible for their failure to timely file 2007 returns is both unconvincing and misguided. Although petitioners did not receive a Form 1099-MISC from the buyer until 2008, the sale of the business took place in 2007 and petitioners received money from the sale in 2007. As cash method taxpayers, petitioners had a responsibility to report this income for 2007--the year they received it. Furthermore, in 2008 petitioners received a Form 1099-MISC for income received from DHCS in 2007 and a Form 1099-S for the sale of the Diamond Bar property in 2007 and still neglected to submit tax returns for 2007 before respondent prepared SFRs. Finally, petitioners' reliance on Mr. Brown does not justify their failure to timely file. See, e.g., United States v. Boyle, 469 U.S. 241, 252 (1985).

We hold that petitioners lacked reasonable cause for failing to file their returns timely and accordingly sustain the section 6651(a)(1) additions to tax for 2007.

B.    Failure To Timely Pay Tax

Section 6651(a)(2) provides for an addition to tax when a taxpayer fails to timely pay the tax shown on a return, unless the taxpayer proves that the failure was due to reasonable cause and not due to willful neglect. Reasonable cause for

[*15] purposes of section 6651(a)(2) depends upon whether the taxpayer, notwith-standing the exercise of ordinary business care and prudence, was in fact unable to pay or would suffer undue hardship if payment were made. See Ruggeri v. Commissioner, T.C. Memo. 2008-300.

A substitute for return prepared by the IRS pursuant to section 6020(b) is treated as the "return" filed by the taxpayer for purposes of section 6651(a)(2). See sec. 6651(g). For each month or fraction thereof for which a failure to pay continues, section 6651(a)(2) adds 0.5% of the amount shown as tax on the return but not paid, up to a maximum addition of 25%.

It was deemed stipulated that petitioners did not file their 2007 returns timely. Respondent prepared SFRs for 2007 that met the requirements of section 6020(b), and petitioners did not pay the amounts shown as due. See sec. 6651(g); Cabirac v. Commissioner, 120 T.C. 163, 170-173 (2003). Petitioners assert that their failure to pay was due to reasonable cause, and the excuses they offer for late payment are the same excuses they offered for late filing. Petitioners offered no evidence to show that they were unable to timely pay their tax liabilities or would suffer undue hardship if they did. We accordingly sustain respondent's determinations with respect to the section 6651(a)(2) additions to tax for 2007.

**[\*16]** C.    Failure To Pay Estimated Tax

Respondent also determined that petitioners are liable for additions to tax for failure to pay estimated tax under section 6654.  Section 6654 imposes an addition to tax on an individual who underpays his estimated tax.[5]  The addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability.  Sec. 6654(c) and (d).  In general, each required installment of estimated tax is equal to 25% of the "required annual payment".  Sec. 6654(d).  A taxpayer has an obligation to pay estimated tax only if he has a "required annual payment".  Wheeler v. Commissioner, 127 T.C. 200, 212 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); see also Mendes v. Commissioner, 121 T.C. 308, 324 (2003).  The "required annual payment" is equal to the lesser of (1) 90% of the tax shown on the taxpayer's return for that year (or, if no return is filed, 90% of his or her tax for such year) or (2) 100% of the tax shown on the taxpayer's return for the immediately preceding taxable year.  Sec. 6654(d)(1)(A) and (B).  Returns submitted after the IRS has issued a notice of deficiency for a

---

[5]Unless a statutory exception applies, the sec. 6654(a) addition to tax is mandatory.  See sec. 6654(a), (e); Recklitis v. Commissioner, 91 T.C. 874, 913 (1988).  Sec. 6654 does not contain a general exception for reasonable cause or absence of willful neglect.  See Grosshandler v. Commissioner, 75 T.C. 1, 21 (1980).  Petitioners do not contend that any of the statutory exceptions under sec. 6654(e) is applicable.

[*17] particular year are not considered filed returns for purposes of section 6654(d)(1)(B)(i) and (ii). See Mendes v. Commissioner, 121 T.C. at 324-325; Wolfgram v. Commissioner, T.C. Memo. 2010-69; Lenihan v. Commissioner, T.C. Memo. 2006-259.

It was deemed stipulated that petitioners did not timely file Federal income tax returns for 2006 and 2007. Although petitioners eventually submitted returns for the 2006 and 2007 tax years, we disregard these returns for the purposes of section 6654 because they were submitted after respondent mailed a notice of deficiency for the 2007 tax year to each petitioner. Mendes v. Commissioner, 121 T.C. at 324-325. Respondent produced sufficient evidence to demonstrate that petitioners had required annual payments for 2007 equal to 90% of their tax for the year, that petitioners did not make any estimated tax payments for 2007, and that petitioners are liable for their respective section 6654 additions to tax for 2007. Accordingly, we hold that petitioners are liable for the section 6654(a) additions to tax for 2007. See sec. 6654(e)(1).

**[\*18]** We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.